UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| SPENCER L. HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-CV-216 |
| | ) | |
| | ) | *Collier / Lee* |
| OCOEE RAFTING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Ocoee Rafting, LLC's motion to dismiss [Doc. 20]. Defendant argues this matter should be dismissed pursuant to the inherent powers of the Court because Plaintiff Spencer L. Hayes "attempt[ed] to use this litigation and a threatened interview on the television program *Dateline NBC* in order to increase the amount he would receive in settlement." [Doc. 20 at PageID#: 48]. Plaintiff filed a timely response in opposition [Doc. 21], and Defendant filed a reply [Doc. 23] and a supplemental reply (to correct minor typographical errors) [Doc. 24]. After careful consideration of the parties' arguments and the undisputed facts, I **RECOMMEND** that the motion be **DENIED**.[1]

**I.  UNDISPUTED FACTS**

In a complaint filed August 18, 2011, Plaintiff alleged that Defendant, who operated a

---

[1] This motion was referred pursuant to 28 U.S.C. § 636(b)(3) [Doc. 22]. Section 636(b)(3) does not specify the standard of review or specific procedures for review to be applied by a district judge when reviewing a magistrate judge's decision in a matter referred under § 636(b)(3). As the only remedy sought by Defendant is case dispositive, and even though I find dismissal is not warranted, I will address the motion in a report and recommendation. Doing so does not in any way indicate the standard of review that may be applied by the district judge if an objection to this report and recommendation is lodged.

whitewater rafting business, engaged in acts and omissions during Plaintiff's rafting trip that amounted to negligence, gross negligence, and reckless, malicious, or intentional conduct [Doc. 1]. As a result, Plaintiff's complaint seeks compensatory damages of $1.5 million and punitive damages of $3 million [Doc. 1]. Plaintiff made an initial settlement demand on March 29, 2012. Defendant rejected Plaintiff's March settlement demand and made a counteroffer. On May 8, 2012, Plaintiff rejected Defendant's counteroffer and made an *increased* settlement demand [Doc. 20 at PageID#: 48-49]. In making the increased demand, Plaintiff advised that he had been contacted by *Dateline NBC* about a possible on-camera interview the next week about the rafting business and "his story." Plaintiff indicated that if his (increased) settlement demand was met, he would be willing to agree to confidentiality. Plaintiff also indicated it was likely the Defendant would want to avoid adverse publicity. The nuances of these communications, all of which took place between counsel, are outlined in the letters attached to the motion to dismiss [Docs. 20-1 and 20-2]. While the implications flowing from the parties' settlement discussions are hotly disputed, an evidentiary hearing is not necessary because the *material* facts set forth above are not in dispute.[2]

Defendant contends the connection between the two events – the increased demand and the possible media interview – is what turns Plaintiff's settlement negotiations into criminal extortion

---

[2] In addition, there is no requirement for a full evidentiary hearing before imposing sanctions; all that is required is fair notice and an opportunity for a hearing on the record. *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011). Plaintiff did not request a hearing in his response. While Defendant indicated it was willing to participate in a hearing, Defendant requested no such hearing and stated there was sufficient evidence before the Court for a ruling without a hearing [Doc. 24 at PageID#: 81-83]. *See also* E.D. TN L.R. 7.2 (motions may be decided without a hearing).
Moreover, the Court concludes Defendant's references in a footnote to the sanctions levied as a result of Plaintiff's counsel's failure to appear at scheduling conferences are wholly unrelated to this matter. Also, and contrary to Defendant's position, Plaintiff's response was timely filed as three days are properly added for electronic service. *See* Fed. R. Civ. P. 5(b)(2)(E) and (3), Fed. R. Civ. P. 6(d), and E.D. TN L.R. 5.2(d).

2

under Tennessee Code Annotated § 39-14-112. It is not necessary for the Court to know the exact amount of the settlement demands and counteroffer. Plaintiff has not disputed that he, through counsel, made an increased settlement demand at the same time he rejected the counteroffer and communicated information about his possible participation in a *Dateline NBC* on-camera interview. Likewise, Plaintiff does not dispute that his increased settlement demand was accompanied by an offer of confidentiality, which would preclude an on-camera interview if the parties reached an agreement to settle.

## II. ANALYSIS

Defendant seeks dismissal of Plaintiff's case based on the allegedly extortionate communications of Plaintiff's attorney during settlement negotiations. In summary, Defendant contends Plaintiff attempted to parlay the possibility of a *Dateline NBC* on-camera interview into a windfall settlement of double his prior demand even though nothing else about the case changed except the possibility of additional adverse publicity vis-a-vis the on-camera interview [Doc. 20]. Defendant contends this settlement tactic amounts to extortion under Tennessee law, and is so inappropriate that the Court should impose the ultimate sanction of dismissing the case pursuant to the Court's inherent power because no lesser sanction would be proper in view of the totality of the events [Doc. 24 at PageID#: 82-83]. Plaintiff contends the motion should be denied because there is no evidence Plaintiff engaged in any conduct to merit sanctions; Plaintiff did not knowingly pursue an improper action; and Defendant has no authority for its contentions [Doc. 21].

### A. The Tennessee Law of Extortion

Under Tennessee law, "[a] person commits extortion who uses coercion upon another person with the intent to . . . [o]btain property, services, any advantage or immunity." Tenn. Code Ann. §

3

39-14-112(a)(1). "Coercion" means a "threat, however communicated, to . . . [e]xpose any person to hatred, contempt or ridicule [or h]arm the credit or business repute of any person . . . ." Tenn. Code Ann. § 39-11-106(a)(3).

Defendant relies heavily on *State v. Parris*, 236 S.W.3d 173 (Tenn. Crim. App. 2007), a case where the defendant was convicted of attempted extortion because he attempted to coerce the lawyer representing his wife in their divorce case by threatening to file a complaint against the lawyer for intentional infliction of emotional distress and by threatening to campaign in an election against the lawyer's husband, a state court judge. Although the case was remanded for a new trial, the Tennessee Court of Criminal Appeals held, as a matter of first impression, that attempted extortion is a crime in Tennessee. *Id.* at 182. The court also held there was sufficient evidence for the jury to convict the defendant of the attempted extortion of both the lawyer and her spouse-judge. *Id.* at 183-85. In so doing, the court rejected defendant's argument that coercion includes only unlawful or wrongful acts, referencing a case where the legal act of picketing could be termed extortionate. *Id.* at 185 (citations omitted). In response to defendant's argument that expanding extortion to legal acts could turn innocuous situations (such as threatening a merchant for a refund) into possible extortion, the court noted that this was unlikely, as an affirmative defense to extortion is a reasonable claim for "[a]ppropriate restitution or appropriate indemnification for harm done." *Id.* at 185 (quoting Tenn. Code Ann. § 39–14–112(b)). Finding the affirmative defense to be fairly raised in *Parris*, the court reversed and remanded because the trial court failed to instruct the jury on this

4

defense.³ *Id.* at 188-89.

B.     **The Court's Inherent Power**

As argued by Defendant, this Court has the inherent power to sanction a party, including a dismissal of the party's claims or defenses, for behavior which abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Bentkowski v. Scene Magazine*, 637 F.3d 689, 697 (6th Cir. 2011) ("A court also has an 'inherent power' to 'levy sanctions in response to abusive litigation practices.'") (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). To impose sanctions under the Court's inherent authority, it is not necessary to expressly consider particular rules of civil procedure or statutes authorizing sanctions. *First Bank of Marietta v. Hartford Underwriters*, 307 F.3d 501, 514 (6th Cir. 2002). A court may dismiss an action as a sanction pursuant to its inherent power "'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting

---

³ Defendant argues this affirmative defense does not apply here as a matter of law because:

> It is inescapable that the plaintiff placed a "price" on his proposal to remain silent inasmuch as the settlement offer doubled *after* the interview with *Dateline* was scheduled. The price of this promised silence is the difference between the two settlement demands. For the same reason, there is no rational basis for the affirmative defense that the plaintiff was seeking "appropriate restitution . . . for harm done . . ." inasmuch as he previously determined, less than two months earlier, that the "appropriate restitution . . . for harm done" was less than half the subsequent settlement demand. Tenn. Code Ann. § 39-14-112. Acting with the advice of counsel and full appraisal of the nature and extent of his injuries, the plaintiff made the March Demand which was presumably his previous opinion as to "appropriate restitution … for harm done" as a result of the incident. The one and only point in this case that has changed is this proposed *Dateline* interview.

[Doc. 20 at PageID#: 56-57].

5

*Chambers*, 501 U.S. at 45-46). The United States Court of Appeals for the Sixth Circuit has also held that "'bad faith' [or conduct that 'was tantamount to bad faith'] is a requirement for the use of the district court's inherent authority . . . ." *First Bank of Marietta*, 307 F.3d at 519. Such inherent powers must be exercised with restraint and discretion, however, especially where outright dismissal of a lawsuit is sought, because such a sanction is particularly severe. *See Chambers*, 501 U.S. at 44-45.

      **C.**      **Sanctions**

The pending issue for determination comes down to whether Plaintiff's attorney's implied, or even direct, threat – to reveal damaging information to a national television audience unless Plaintiff's sharply increased settlement demand was met – warrants the dismissal of this litigation. Under Tennessee law, it appears possible that such a threat could be considered attempted extortion once the perfectly legal actions – prosecution of a lawsuit in good faith and provision of information to a television show – are coupled with a demand for money. This is only possible, however, if the demand is not a reasonable claim for "appropriate restitution or appropriate indemnification for harm done." Tenn. Code Ann. § 39–14–112(b). Defendant has presented no authority that doubling a previously rejected settlement demand in pending litigation in exchange for confidentiality in light of potential media interest is sanctionable as a civil matter.

In settlement negotiations, it is a common tactic for lawyers to point out, and even exaggerate, to the opposing side the possible dire consequences of not reaching agreement. Similarly, the negotiation tactic of seeking monetary compensation in exchange for confidentiality is not uncommon. Even the negotiation tactic of increasing an earlier settlement demand because it was rejected via a counteroffer, is not unheard of in litigation. Does adding the specter of adverse

6

publicity in already pending litigation take such negotiations so far beyond the bounds of legitimate pressure upon an adversary that the conduct becomes tantamount to bad faith warranting the ultimate sanction of dismissal of the case? I think not.

The conduct at issue may not be becoming of an attorney, but Defendant has cited to no case suggesting that such negotiations between sophisticated opposing counsel warrant the ultimate sanction of dismissal of Plaintiff's case. Whether the increased settlement demand is in excess of the amount legitimately sought for harm done cannot be determined on the present record, and the fact that the settlement demand doubled in light of the potential for additional negative publicity, as alleged by Defendant, does not resolve the issue. I conclude Defendant has not shown that Plaintiff's doubling of the settlement demand in response to a counteroffer, while simultaneously proposing a confidentiality provision to avoid possible, imminent adverse publicity, constitutes an act of bad faith or vexatious, wanton, or oppressive conduct sufficient to warrant dismissal of this case, the only sanction sought by Defendant.

Accordingly, I **RECOMMEND**[4] that Defendant's motion [Doc. 20] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).